## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JMCB, LLC, ON BEHALF OF ITSELF**      **DOCKET  NO. 17-00075**
**AND ALL OTHERS**
**SIMILARLY SITUATED**

**VERSUS**                         **JUDGE DEGRAVELLES**

**THE BOARD OF COMMERCE**
**& INDUSTRY; LOUISIANA**         **MAGISTRATE WILKINSON**
**DEPARTMENT OF**
**ECONOMIC DEVELOPMENT; AND,**
**CAMERON LNG, LLC**
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S FIRST AMENDING
## CLASS ACTION COMPLAINT

**NOW  INTO  COURT**, comes Plaintiff, JMCB, LLC, on behalf of itself and on behalf of all others similarly situated, which respectfully files this First Amending Class Action Complaint as ordered by the Court (Doc. 69), and respectfully represents:

1.      Made defendants herein are: The Board of Commerce and Industry (hereinafter "Board"); Louisiana Department of Economic Development (hereinafter "LDED"); and, Cameron LNG, LLC, (hereinafter "Cameron LNG"), a foreign limited liability company domiciled in Delaware which initially qualified to do business in Louisiana on December 13, 2001.

2.      Ad valorem taxes (also known as "property taxes") in Louisiana are established at Article VII, Section 18 of the Louisiana Constitution of 1974.  The classifications of property subject to ad valorem taxation in Louisiana are as follows:

land; improvements for residential purposes; electric cooperative properties, excluding land; public service properties, excluding land; and, other property.

3.    Some property in Louisiana is exempt from ad valorem taxation.  The homestead exemption is a popular exemption from ad valorem taxation, found at Article VII, Section 20 of the Louisiana Constitution of 1974, and other property exemptions are found at Article VII, Section 21 of the Louisiana Constitution of 1974.  In addition to the homestead exemption, only the property listed in Article VII, Section 21 of the Louisiana Constitution of 1974 is exempt from ad valorem taxation and no other.

4.    This case involves the property exemption found at Article VII, Section 21(F) of the Louisiana Constitution of 1974. The text of this constitutional provision provides, in pertinent part, as follows:

> **Section 21**.  In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
>
> ….
>
> (F) Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.
>
> The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.
>
> The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

5.      As noted above in the constitutional provision, as an inducement for manufacturers to build new manufacturing plants or to build additions to existing manufacturing plants in Louisiana, La. Const. art. VII, § 21(F) authorizes the State of Louisiana and the Board, with the approval of the governor of Louisiana, to enter into contracts to exempt new manufacturing establishments or additions to existing manufacturing establishments from ad valorem taxes on such terms as the Board deems in the best interest of the State.

6.      The rules for the Industrial Ad Valorem Tax Exemption Program are contained in the Louisiana Administrative Code at Title 13, Chapter 5. In order to apply for the exemption, an advance notification form must be filed with LDED prior to the beginning of construction or installation of facilities.  An application must also be filed with LDED during the prescribed time period allowed by the rules.  According to the rules, eligibility of the applicant and the property for the exemption is reviewed by the Board based upon the facts and circumstances existing at the time the application is considered. An application filed prior to completion of construction may be considered by the Board and a contract may be executed based upon the best available estimates of the values of the buildings, equipment and machinery to be made part of the facility, subject to review and approval of the Project Completion Report and Affidavit of Final Cost.

7.      Assuming the Board votes to approve the exemption request, the exemption itself is evidenced by a written contract that is supposed to be signed by the governor of Louisiana, a duly authorized representative of the Board, and a duly authorized representative of the applicant/manufacturer. As noted in constitutional provision, any

exemption granted is for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no ad valorem taxes shall be collected thereon during the period of exemption.

8.     On or about July 22, 2003, Cameron LNG submitted an Advance Notification form to LDED for the purpose of applying for an ad valorem tax exemption provided for at La. Const. art. VII, § 21(F).  In the "short description of this project" section of the advance notification form, the form stated: "Liquefied Natural Gas receiving and processing facility" (hereinafter referred to as "Regasification Facility"). The form further described the project as a "new" project, and stated that Cameron LNG's investment amount in the project, to be considered for the exemption, would be $552,000,000.  The form stated that the project's physical address was "801 North Main Street, Hackberry, Louisiana, 70645."  LDED assigned Project Number 20030342 to the project.

9.     On or about September 26, 2003, Cameron LNG submitted an Industrial Ad Valorem Tax Exemption Program application ("Application") to LDED with respect to the Regasification Facility.  In the "product manufactured" section of the Application, Cameron LNG inserted: "Regasified Natural Gas." In the "give a detailed explanation of plant operations and manufacturing process" section of the Application, Cameron LNG inserted the following description: "Cameron LNG, LLC will engage in a manufacturing process that converts liquefied natural gas (LNG) into a gas suitable for consumer use and as a feedstock for the chemical industry. LNG has already gone through an involved treating, dehydration and purification process to remove impurities."  The Application described the project type as a "new plant," and further stated that Cameron LNG's

investment amount in the project, to be considered for the exemption, would be $549,229,000.  Like the Advance Notification form, the Application stated that the plant's physical address and actual location was "801 North Main Street, Hackberry, Louisiana, 70645."

10.    Upon information and belief, Cameron LNG did not have any business operations at 801 North Main Street in Hackberry, Louisiana, at the time the Application and Advance Notification form were submitted to LDED.

11.    On or about October 1, 2003, LDED mailed a letter to Cameron LNG stating that the Application would be considered by the Board at its meeting on October 22, 2003.  Enclosed with the letter was a work sheet containing LDED's staff's recommendation relative to the Application. The work sheet noted that: the company name is "Cameron LNG, LLC"; the project type is "N" (presumably meaning "New"); the contract amount was "$549,229,000"; the estimated ad valorem tax exemption was "$126,981,745"; and, the LDED staff recommendation was that the "subject application is eligible for tax exemption on the investment amount of $549,229,000."

12.    On or about October 22, 2003, the Board voted to approve Cameron LNG's request for tax exemption on the estimated $549,229,000 investment amount for the Regasification Facility.  The letter from LDED informing Cameron LNG of the Board's vote stated that the initial contract ("Regasification Contract") is for a period of five (5) years with a provision for an additional five (5) years of exemption, assuming compliance with all provisions of the contract and the rules governing the tax exemption program. Three (3) sets of the Regasification Contract were enclosed with the letter and

the letter requested that all three copies be executed and returned to LDED within thirty (30) days.

13.     Upon information and belief, on or about December 22, 2003, Cameron LNG returned the Regasification Contracts to LDED which were executed by an authorized representative of Cameron LNG, and LDED returned a fully executed Regasification Contract to Cameron LNG on or about January 7, 2004.

14.     Plaintiff shows that the Regasification Contract refers to Cameron LNG's "plans to construct a new manufacturing establishment" in at least two different sections of the contract, and states that the establishment is to be located at "801 North Main Street, Hackberry, Cameron, Louisiana," which was consistent with the address provided on the application and advance notification form.

15.     Upon information and belief, construction of the Regasification Facility began in 2004.

16.     After completion of construction of the Regasification Facility, Cameron LNG submitted an amended Affidavit of Final Cost to LDED in February, 2010, along with supporting documentation in spreadsheet form listing the asset description for each item for which the exemption was being claimed, the date placed in service for each item, and the cost basis for each listed item.  The amended affidavit listed "801 North Main Street, Hackberry, LA" as the address for the Regasification Facility, which was consistent with the address provided on the Application, the Advance Notification form and in the Regasification Contract. Pursuant to the Regasification Contract, because construction of the Regasification Facility was completed and operations began in 2009,

the effective date of the contract, and thus the tax exemption, began on December 31, 2009.

17.    In 2014, LDED forwarded to Cameron LNG an Industrial Tax Exemption Renewal Data Form for the renewal of the Regasification Contract. The form informed Cameron LNG that the initial contract was issued for up to five years, with an option to renew for five years, and that the initial contract period would expire December 31, 2014. The form requested updated data regarding the number of full time employees on the payroll, and requested a brief explanation of Cameron LNG's manufacturing process, including an explanation if any of the process had been changed, modified, or eliminated. In responding to the latter requested data, the following description appears on the form Cameron LNG filed with LDED in pertinent part: "Cameron LNG, LLC will engage in a manufacturing process that converts liquefied natural gas (LNG) into a gas suitable for consumer use and as a feedstock for the chemical industry." This is the same process that Cameron LNG described in its Application when the original Regasification Contract was executed in 2003. The Renewal Data Form showed that Cameron LNG had 62 employees at that time at the Regasification Facility. The Board voted to renew the Regasification Contract for the additional five year term. Cameron LNG executed the renewal contract on August 6, 2014; the Board's representative executed the renewal contract on February 16, 2015; and, Governor Jindal executed the renewal contract on July 2, 2015.

18.    Prior to filing for the renewal of the Regasification Contract in 2014, Cameron LNG filed several other tax exemption applications with LDED related to the Regasification Facility and the Board approved each of them. *See* Contract Numbers:

20030342B-ITE; 20110922-ITE; 20110922A-ITE; 20120654-ITE; 20120899-ITE; 20130360-ITE; 20130562-ITE; and, 20140602-ITE. In each such application, Cameron LNG utilized the same "manufacturing process" description as it did in Contract Number 20030342-ITE, *i.e.*, "Cameron LNG, LLC will engage in a manufacturing process that converts liquefied natural gas (LNG) into a gas suitable for consumer use and as a feedstock for the chemical industry." Further, with the exception of Contract Number 20030342B-ITE (which referred to the project as "Phase II" or a "start-up/new plant), Cameron LNG referred to the project type in these applications as an "expansion," or an "addition to", or "upgrades," or "miscellaneous capital additions" to the existing Regasification Facility, which is located at 801 North Main Street, Hackberry, Louisiana. Cameron LNG was able to classify these project types in this manner because the effective date of the Regasification Contract for the Regasification Facility was December 31, 2009, and the Regasification Facility was already operational at the time these "additions to" the Regasification Facility were presented for a tax exemption pursuant to La. Const. art. VII, § 21(F).

19.    On or about March 28, 2013, Cameron LNG submitted an Industrial Ad Valorem Tax Exemption Program Application ("Liquefaction Application I") and an Advance Notification Form ("Liquefaction Advance Notification Form I") to LDED for the purpose of applying for an ad valorem tax exemption provided for at La. Const. art. VII, § 21(F). In the "product manufactured" section of Liquefaction Application I, Cameron LNG inserted: "Liquefied Natural Gas." In the "manufacturing process" section of Liquefaction Application I, Cameron LNG inserted the following as a description of its purported manufacturing process: "Cameron LNG will engage in a

manufacturing process to convert natural gas from its gaseous state into a new liquid state that is suitable for delivery to its customers. The artificial process starts with treatment of the gas to remove certain impurities, to remove water vapor and to remove heavy hydrocarbons, thus changing the molecular makeup of the gas. The gas is then condensed and cooled through exposure to progressively cooler refrigerants until it reaches a liquid state at -260 degrees Fahrenheit. Once the natural gas is converted to its liquid state, it is stored and delivered to customers." Liquefaction Application I and Liquefaction Advance Notification Form I stated that the project's physical address and actual location was "301 North Main Street, Hackberry, Louisiana." Liquefaction Application I further stated that Cameron LNG's investment amount in the project, to be considered for the exemption, would be $9,020,758,000.

20.     In one section of Liquefaction Application I, Cameron stated that the project type was an "addition to an existing plant." In another section of Liquefaction Application I, Cameron stated that this was an "expansion of facility to convert natural gas into liquefied natural gas." Liquefaction Advance Notification Form I referred to the project type as an "expansion," but then also described the project as a "New Manufacturing Operation to convert Natural Gas into Liquefied Natural Gas."

21.     Upon information and belief, Cameron LNG did not have an existing plant or facility which was engaged in manufacturing anything at 301 North Main Street in Hackberry, Louisiana, at the time Liquefaction Application I was considered by the Board, and therefore, the Liquefaction Facility could not have been an "addition to an existing plant" at that location.

22.     Plaintiff avers that the Liquefaction Facility was also not an "addition to an existing plant", *i.e.,* the Regasification Facility, because, as outlined in Cameron LNG's own applications and advance notification forms noted above, the process at each facility is different; the end product at each facility is different; each facility utilizes different machinery and equipment that is not dependent on the other; and, the facilities are separate and are located at different addresses.

23.     Plaintiff avers that Cameron LNG was required to categorize the Liquefaction Facility as a "new plant or establishment" on Liquefaction Application I that would have to qualify as such to obtain a tax exemption under La. Const. art. VII, § 21(F). Instead, Cameron LNG completed Liquefaction Application I incorrectly by representing that the Liquefaction Facility was an "addition to an existing plant."

24.     On or about April 17, 2013, LDED mailed a letter to Cameron LNG stating that Liquefaction Application I would be considered by the Board at its meeting on April 23, 2013.  Enclosed with the letter was a work sheet containing LDED's staff's recommendation relative to Liquefaction Application I. The work sheet is dated April 12, 2013, and noted that: the company name is "Cameron LNG, LLC"; the project type is "expansion"; the contract amount was "$9,020,758,000"; the ad valorem tax was "$2,194,750,421"; and, the staff recommends "approval." Upon information and belief, LDED conducted no investigation into whether or not Cameron LNG's process qualified as manufacturing under the constitutional provision.

25.     Plaintiff avers that although LDED's staff referred to the project type as an "expansion," and recommended approval of the application, at least in part on that classification, La. Const. art. VII, § 21(F) only provides for tax exemptions thereunder to

a "new manufacturing plant or establishment" or "an addition or additions to an existing manufacturing plant or establishment."   The Liquefaction Facility was not an addition to the existing Regasification Facility, and it did not qualify for a tax exemption as a new manufacturing plant or establishment either.

26.     Nevertheless, on or about April 23, 2013, the Board, after conducting no independent investigation of its own regarding Cameron LNG's Application, confirmed LDED's unreasonable recommendation and voted to approve Cameron LNG's request for tax exemption on the estimated $9,020,758,000 investment amount.  The letter from LDED to Cameron LNG informing it of the Board's vote stated that the initial contract is for a period of five (5) years with a provision for an additional five (5) years of exemption, assuming compliance with all provisions of the contract and the rules governing the tax exemption program. Three (3) sets of the contract (hereinafter "Liquefaction Contract I") were enclosed with the letter and the letter requested that all three copies be executed and returned to LDED within thirty (30) days.

27.     Plaintiff shows that Liquefaction Contract I refers to Cameron LNG's Liquefaction Facility as an addition to its manufacturing establishment, stating: "[T]he Contractee will construct at an approximate cost of $9,020,758,000, *an addition to its manufacturing establishment*." (emphasis added).

28.     James R. Asay, identified as Vice President - Tax, executed Liquefaction Contract I on behalf of Cameron LNG in San Diego, California, on June 12, 2013; Anne G. Villa, the duly authorized representative of the Board executed Liquefaction Contract I on July 30, 2013; and, Governor Piyush "Bobby" Jindal executed Liquefaction Contract I on August 13, 2013.

29.     On or about August 22, 2013, LDED mailed a letter to Cameron LNG which included a copy of Liquefaction Contract I.  The Contract Number was 20130429-ITE. Also included were a copy of the Project Completion Report, the Affidavit of Final Cost, the Incentives Program Annual Report, and the Annual Project Status Report for Advance Applications that are required to be filed with LDED. The letter stated that the Project Completion Report was due not later than three (3) months after the beginning of operations or thirty (30) days after completion of construction, or receipt of the fully executed contract, whichever occurs last. The letter further stated that the Affidavit of Final Cost is due within six (6) months after construction has been completed, or receipt of the fully executed contract, whichever occurs last. The letter further stated that the Incentives Program Annual Report is due by May 1 of the year following the year an exemption is granted. And finally, the letter stated that because the contract was considered a "front end" contract, the Annual Project Status Report for Advance Applications is due by December 31 of each year that the project is not completed until such time as the Project Completion Report is filed.

30.     Pursuant to Article V of Liquefaction Contract I, the effective date of the contract shall be the last day of the tax assessment year in which the project becomes operational as stated in the Project Completion Report, and from the effective date of the contract and for a period of five (5) years thereafter, the State of Louisiana gives and grants unto Cameron LNG an exemption from all ad valorem taxes, including all state, parish, municipal, district and special taxes for the property belonging to Cameron LNG as described in the Affidavit of Final Cost.

31.    Pursuant to Article IV of Liquefaction Contract I, a sworn statement specifying the exact date of completion and beginning of operation shall be filed with LDED's Office of Business Development on the Project Completion Report within thirty (30) days following the last day of the month after effective operation has begun, or construction is essentially complete, whichever occurs last.

32.    Upon information and belief, Liquefaction Contract I was considered to be a "front end" contract due to the fact that the effective date of the contract and the resulting tax exemption would occur several years after the contract was actually executed, and Cameron LNG is required to file an Annual Status Declaration for Advance Contracts Form each year with LDED until the effective date of the contract.

33.    Construction of the Liquefaction Facility began in October of 2014. Pursuant to Cameron LNG's 2015 Annual Project Status Report for Advance Applications, filed with LDED in January of 2016, the Liquefaction Facility was approximately 30% completed at that time and the company expected to achieve commercial operational dates for Liquefaction Trains 1, 2 and 3 in early, mid and late 2018, respectively. Based on this information, the Liquefaction Facility has not yet become operational and the effective date of Liquefaction Contract I has not occurred, and thus, no future application requesting a tax exemption based on being "an addition to" the Liquefaction Facility could be approved until after those criteria were satisfied.

34.    Yet, since the execution of Liquefaction Contract I (Contract Number 20130429-ITE), Cameron LNG has submitted another Industrial Ad Valorem Tax Exemption Program Application ("Liquefaction Application II) and Advance Notification Form (Liquefaction Advance Notification Form II) to LDED for consideration in relation

to Cameron LNG's liquefaction activities.  Liquefaction Advance Notification Form II, submitted to LDED on or about January 25, 2016, states that the project type is "expansion"; the project name is "LNG Expansion"; and, the description given for the project stated: "Expanding current liquefaction facility with the addition of another LNG train and track." The project physical address provided was: "255 North Main Street, Hackberry, LA 70645."  The estimated new number of jobs to be created by the project was 48, with an estimated annual payroll of $3,360,000.

35.     Liquefaction Application II, also submitted to LDED on or about January 25, 2016, also gave a physical address of "255 N. Main Street, Hackberry, LA 70645," and stated that the product manufactured is "Liquefied Natural Gas." In the "manufacturing process/activities" section of Liquefaction Application II, Cameron LNG inserted a description of the same purported "manufacturing process" it previously used for Liquefaction Application I.  Liquefaction Application II stated that the project type is "addition to an existing plant," and further states that "Cameron LNG has plans to expand the current liquefaction facility (currently under construction) to add an additional liquefaction train and an additional LNG tank. This phase of the project will not include an additional building." Finally, Liquefaction Application II further stated that Cameron LNG's investment amount in the project, to be considered for the exemption, would be $3,200,000,000.   LDED acknowledged receipt of Liquefaction Application II and Liquefaction Advance Notification Form II by letter to Cameron LNG dated January 26, 2016.

36.     Plaintiff avers that Cameron LNG's proposed plant/project described in Liquefaction Application II was not "an addition to" the existing Regasification Facility

for the same reasons, noted above, that the Liquefaction Facility was not "an addition to" the Regasification Facility.

37.    Plaintiff avers that Cameron LNG's proposed plant/project described in Liquefaction Application II was also not "an addition to" the still-under-construction Liquefaction Facility such that it would qualify for a tax exemption under La. Const. art. VII, § 21(F) because: (1) the Liquefaction Facility itself did not qualify for and/or was not granted a tax exemption as a "new manufacturing plant or establishment" under La. Const. art. VII, § 21(F); and (2) La. Const. art. VII, § 21(F) requires there to be an existing manufacturing plant or establishment (Plaintiff denies that the Liquefaction Facility will "manufacture" anything pursuant to the constitutional definition) which is actually operating in order for an addition to the plant or establishment to qualify for tax exemption treatment, and, as shown above, the Liquefaction Facility is still under construction and will not be operational until 2018.

38.    Plaintiff avers that Cameron LNG was required to categorize the proposed plant/facility on Liquefaction Application II as a "new plant or establishment" that would have to qualify as such to obtain a tax exemption under La. Const. art. VII, § 21(F); instead, Cameron LNG completed Liquefaction Application II incorrectly by representing that the proposed plant/facility in Liquefaction Application II was an "addition to an existing plant."

39.    On or about February 24, 2016, LDED mailed a letter to Cameron LNG stating that Liquefaction Application II would be considered by the Board at its meeting on March 22, 2016.  Enclosed with the letter was a work sheet containing LDED's staff's recommendation relative to Liquefaction Application II. The work sheet noted that: the

company name is "Cameron LNG, LLC"; the project type is "expansion"; the project description was "expansion of existing facility"; the contract amount was "$3,200,000,000"; the estimated ad valorem tax exemption was "$778,560,000"; and, the staff recommendation was "approval."

40.    Plaintiff avers that although LDED's staff referred to the project type as an "expansion of existing facility," and recommended approval of the application at least in part on that classification, La. Const. art. VII, § 21(F) only provides tax exemptions thereunder to a "new manufacturing plant or establishment" or "an addition or additions to an existing manufacturing plant or establishment." The facility was not an addition to the existing Regasification Facility; the Liquefaction Facility was not an existing plant which was already engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process at the time Liquefaction Application II was considered by the Board; and, the facility did not qualify for a tax exemption as a new manufacturing plant or establishment either.

41.    Plaintiff avers that while Cameron LNG referred to this as an expansion of the "existing facility," it was neither an addition to the Liquefaction Facility or the Regasification Facility. Rather, notwithstanding that it will not manufacture anything pursuant to the constitutional provision, it was a "new plant or establishment" which had to meet the requirements of La. Const. art. VII, § 21(F) in order to qualify for a tax exemption.

42.    On March 22, 2003, the Board voted to approve Cameron LNG's request for tax exemption on the estimated $3,200,000,000 investment amount.  The letter sent to

Cameron LNG informing it of the Board's vote stated that the initial contract is for a period of five (5) years with a provision for an additional five (5) years of exemption, assuming compliance with all provisions of the contract and the rules governing the tax exemption program. Three (3) sets of the contract ("Liquefaction Contract II") were enclosed with the letter and the letter requested that all three copies be executed and returned to LDED within thirty (30) days.

43.    Plaintiff shows that Liquefaction Contract II states that Cameron LNG "will construct an addition to its manufacturing establishment" in at least two different sections of the contract, and states that the establishment is located at "255 North Main Street, Hackberry, Louisiana, in Cameron Parish."  Plaintiff shows that 255 North Main Street is not the address of the Regasification Facility (801 North Main Street), or the address of the Liquefaction Facility (301 North Main Street).

44.    Based on all of the above, Plaintiff avers that Cameron LNG's major tax exemption applications deal with three separate and distinct plants/facilities in Hackberry, Louisiana. The first major application was for the Regasification Facility (which was also the first facility to be built) which Cameron LNG described as a "liquefied natural gas receiving and processing facility" in its first application submitted to LDED. Cameron LNG received a tax exemption contract for the initial construction of the Regasification Facility and has received additional tax exemption contracts for Regasification Facility additions since 2004. The address for this facility is 801 North Main Street, Hackberry, Louisiana. The second major application was for the Liquefaction Facility. The Liquefaction Facility has been under construction since 2014 and is currently still under construction.  According to Cameron LNG, this facility will

engage in a process to convert natural gas from its gaseous state into a new liquid state that is suitable for delivery to its customers, and Plaintiff contests that this described process meets the constitutional definition of manufacturing.  This described process is the opposite of the process engaged in by the Regasification Facility. As such, the Liquefaction Facility is not an "addition to" the existing Regasification Facility as suggested by Cameron LNG in its filings with LDED; but rather, is a separate and new facility, with totally different machinery and equipment, which had to satisfy the criteria of La. Const. art. VII, § 21(F) on its own merit in order to qualify for a tax exemption. Clearly, the Liquefaction Facility has nothing to do with the Regasification facility, and the address for the Liquefaction Facility (301 North Main Street, Hackberry, Louisiana) is different than the address for the Regasification Facility.  Finally, the third major application filed by Cameron LNG, like Liquefaction Application I, was also for a facility which Cameron LNG suggests will engage in a process to convert natural gas from its gaseous state into a new liquid state that is suitable for delivery to its customers. Upon information and belief, construction on this facility began in 2017.  Clearly, this process is the opposite of the process engaged in by the Regasification Facility. As such, this facility is not an "addition to" the existing Regasification Facility. Likewise, this facility is not an "addition to" the Liquefaction Facility for the reasons discussed above. Rather, is a separate and new facility, with totally different machinery and equipment than the Liquefaction Facility, which had to satisfy the criteria of La. Const. art. VII, § 21(F) on its own merit in order to qualify for a tax exemption. The address for this facility (255 North Main Street, Hackberry, Louisiana), is different than the address for the Liquefaction Facility (301 North Main Street, Hackberry, Louisiana.)

45.     Plaintiff, JMCB, LLC, is a Louisiana domestic limited liability company which currently owns property (land) in Cameron Parish which is subject to ad valorem taxes for which no exemption is available.

46.     Plaintiff avers that it will have an inflated ad valorem tax liability due and payable to Cameron Parish taxing bodies and entities that receive ad valorem taxes as a result of the exemptions granted to Cameron LNG through Liquefaction Contracts I and II after the effective dates of the respective contracts, and that it and the class members would, including the Cameron Parish taxing bodies and entities that receive ad valorem taxes, benefit from the payment of ad valorem taxes by Cameron LNG.

47.     Plaintiff avers that the Liquefaction Facility is not an addition to the existing Regasification Facility pursuant to La. Const. art. VII, § 21(F), but rather, is a new, distinct and separate facility which had to qualify for a tax exemption under La. Const. art. VII, § 21(F) on its own merit.

48.     Plaintiff avers that Cameron LNG did not have an existing "liquefaction facility" at 801 North Main Street, in Hackberry, Louisiana, at the time Liquefaction Application I was considered by the Board.  The Regasification Facility is located at 801 North Main Street in Hackberry, and the Liquefaction Facility was to be located at 301 North Main Street in Hackberry.

49.     Plaintiff avers that Cameron LNG submitted Liquefaction Application I and Liquefaction Advance Notification Form I to LDED which stated the project type was an "addition to an existing plant" and an "expansion of facility to convert natural gas into liquefied natural gas," and thus, was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F),

when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (3) the Liquefaction Facility was not an "addition to" the already existing Regasification Facility; and/or (4) the Liquefaction Facility was not an addition to an already existing manufacturing establishment at the provided Liquefaction Facility address; and/or (5) the Liquefaction Facility was not going to serve as an integral part of any existing manufacturing process that may or may not be already occurring at the Regasification Facility; and/or (6) the Liquefaction Facility will not be engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.   As a result, Plaintiff avers that the Board exceeded its constitutional authority in entering into Liquefaction Contract I because Cameron LNG did not qualify for and was not authorized to receive an industrial tax exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F).

50.    Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of Louisiana Constitution of 1974, Article VII, Section 21(F) because Cameron LNG submitted an industrial ad valorem tax exemption program application and advance notification form which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art.

VII, § 21(F), when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (3) the Liquefaction Facility was not an addition to the already existing Regasification Facility; and/or (4) the Liquefaction Facility was not an addition to an already existing manufacturing establishment at the provided Liquefaction Facility address; and/or (5) the Liquefaction Facility will not serve as an integral part of any existing manufacturing process that may or may not be already occurring at the Regasification Facility; and/or (6) the Liquefaction Facility will not be engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.  As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract I is an absolute nullity and/or is null and void and of no force or legal effect.

51.    Plaintiff avers that Cameron LNG submitted Liquefaction Application I and Liquefaction Advance Notification Form I to LDED which failed to state that Cameron LNG was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F).

52.    Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of the Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of  La. Const. art. VII, § 21(F) because Cameron LNG submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification

Form to LDED which failed to state that Cameron LNG was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F). As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract I is an absolute nullity and/or is null and void and of no force or legal effect.

53.    Plaintiff avers that the Board exceeded its constitutional authority in entering into Liquefaction Contract I because Cameron LNG was not authorized to receive an industrial tax exemption under La. Const. art. VII, § 21(F) because Cameron LNG's Liquefaction Facility at 301 North Main Street in Hackberry, Louisiana, is not a plant or establishment which engages or will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

54.    Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of La. Const. art. VII, § 21(F) because Cameron LNG's Liquefaction Facility at 301 North Main Street in Hackberry, Louisiana, is not a plant or establishment which engages or will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process. As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract I is an absolute nullity and/or is null and void and of no force or legal effect.

55.    Plaintiff avers that Cameron LNG's Liquefaction Facility at 301 North Main Street in Hackberry, Louisiana, is not a new "manufacturing establishment" or an

"addition to an existing manufacturing establishment" according to the constitutional definition found at La. Const. art. VII, § 21(F). As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract I is an absolute nullity and/or is null and void and of no force or legal effect.

56.    Plaintiff avers that Liquefaction Contract I and II are unconstitutional because the purported "manufacturing process" described by Cameron LNG in Liquefaction Application I and II does not meet the required definition of "working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition to an existing manufacturing establishment" definitions as outlined in La. Const. art. VII, § 21(F).  As a result, Plaintiff and the class seek a declaratory judgment against the Defendants declaring that Liquefaction Contract I and II are absolute nullities and/or null and void and without force or legal effect.

57.    Plaintiff avers that Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II to LDED which stated the project type was an "addition to an existing plant" and an "expansion of facility," and thus, was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (3) the facility was not an addition to the already existing Regasification Facility; and/or (4) the facility was not an

addition to an already existing manufacturing establishment at the Liquefaction Facility address; and/or (5) the facility was not going to serve as an integral part of any existing manufacturing process that may or may not be already occurring at the Regasification Facility and/or the Liquefaction Facility. As a result, Plaintiff avers that the Board exceeded its constitutional authority in entering into Liquefaction Contract II because Cameron LNG did not qualify and was not authorized to receive an industrial tax exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F).

58.    Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of Liquefaction Contract II to Cameron LNG was an improper act of the Board in violation of Louisiana Constitution of 1974, Article VII, Section 21(F) because Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (3) the facility was not an addition to the already existing Regasification Facility; and/or (4) the facility was not an addition to an already existing establishment at the provided Liquefaction Facility address; and/or (5) the facility was not going to serve as an integral part of any existing manufacturing process that may or may not be already occurring at the Regasification Facility and/or the Liquefaction Facility. As a result,

Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract II is an absolute nullity and/or is null and void and of no force or legal effect.

59.     Plaintiff avers that Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II to LDED which failed to state that Cameron LNG was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F).

60.     Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of the Liquefaction Contract II to Cameron LNG was an improper act of the Board in violation of La. Const. art. VII, § 21(F) because Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II to LDED which failed to state that Cameron LNG was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F).  As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract II is an absolute nullity and/or is null and void and of no force or legal effect.

61.     Plaintiff avers that the Board exceeded its constitutional authority in entering into Liquefaction Contract II because Cameron LNG was not authorized to receive an industrial tax exemption under La. Const. art. VII, § 21(F) because Cameron LNG's facility at 255 North Main Street in Hackberry, Louisiana is not a plant or establishment which engages or will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

62.     Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of Liquefaction Contract II to Cameron LNG was an improper act of the

Board in violation of La. Const. art. VII, § 21(F) because Cameron LNG's facility at 255 North Main Street in Hackberry, Louisiana, is not a plant or establishment which engages or will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process. As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract II is an absolute nullity and/or is null and void and of no force or legal effect.

63.    Plaintiff avers that Cameron LNG' facility at 255 North Main Street in Hackberry, Louisiana, is not a new "manufacturing establishment" or an "addition to an existing manufacturing establishment" according to the constitutional definition found at La. Const. art. VII, § 21(F). As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that Liquefaction Contract II is an absolute nullity and/or is null and void and of no force or legal effect.

64.    Plaintiff avers that Liquefaction Contract II is unconstitutional because the purported "manufacturing process" described by Cameron LNG in Liquefaction Application II does not meet the required definition of "working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition to an existing manufacturing establishment" definitions as outlined in La. Const. art. VII, § 21(F).  Plaintiff and the class seek a declaratory judgment against the Defendants declaring that Liquefaction Contract II is an absolute nullity and/or null and void and without force or legal effect.

65.     This action is brought and maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings this proposed Rule 23(b)(1) and/or (b)(2) class action on behalf of itself, and on behalf of all others similarly situated, as representative of the following proposed class:

> Any and all individuals and businesses domiciled in Louisiana that own property in Cameron Parish, State of Louisiana that is subject to ad valorem taxation, and any and all Cameron Parish governmental bodies and entities that are entitled to receive Cameron Parish ad valorem property taxes, as of December 27, 2016.

> Specifically excluded from the class are Cameron LNG, LLC, its successors and assigns, and all members of the judiciary, their spouses, and their immediate family members.

66.     The Plaintiff and the class are entitled to have this cause of action maintained as a class action pursuant to Rule 23(a), and Rule 23(b)(1) and/or (b)(2) for, *inter alia*, the following reasons:

(a)     the class is so numerous that joinder of all members is impracticable;

(b)     there are questions of law or fact common to the class;

(c)     the claims of the representative party are typical of the claims of the class;

(d)     the representative party will fairly and adequately protect the interests of the class; and,

(e)     the prosecution of separate actions by or against individual members of the class would create a risk of: (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the parties opposing the class, or (2) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(f)    the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

67.    On information and belief, it is alleged that there are several thousand individuals and businesses, and several applicable governmental bodies and entities in Cameron Parish, which would qualify as a member of the proposed class.

**WHEREFORE**, Plaintiff JMCB, on its own behalf, and on behalf of all others similarly situated, prays that after all due proceedings, there be orders and judgments entered against the Defendants as follows:

I.    That an order be entered herein certifying this action as a class action;

II.    That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that Liquefaction Contract I is null and void and without legal effect because Cameron LNG submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification Form which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided Liquefaction Facility location at the time the application was considered by the Board; and/or (3) the Liquefaction

Facility was not an addition to the already existing Regasification Facility; and/or
(4) the Liquefaction Facility was not an addition to an already existing
manufacturing establishment at the provided Liquefaction Facility address; and/or
(5) the Liquefaction Facility will not serve as an integral part of any existing
manufacturing process that may or may not be already occurring at the
Regasification Facility; and/or (6) the Liquefaction Facility will not be engaged
in the business of working raw materials into wares suitable for use or which
gives new shapes, qualities or combinations to matter which already has gone
through some artificial process;

      III.    That this Court issue a declaratory judgment in favor of the
Plaintiff JMCB and the Class and against the Defendants, declaring that the
issuance of Liquefaction Contract I to Cameron LNG was an improper act of the
Board in violation of the Louisiana Constitution of 1974, Article VII, Section
21(F) and declaring that the contract is null and void and without legal effect
because Cameron LNG submitted an Industrial Ad Valorem Tax Exemption
Program Application and Advance Notification form to LDED which failed to
state that Cameron LNG was applying for an exemption under the  "new
manufacturing establishment" provision of La. Const. art. VII, § 21(F), and
instead, stated that it was applying for an exemption under the "addition to an
existing manufacturing establishment" provision of La. Const. art. VII, § 21(F);

      IV.    That this Court issue a declaratory judgment in favor of the Plaintiff
JMCB and the Class and against the Defendants, declaring that the issuance of
Liquefaction Contract I to Cameron LNG was an improper act of the Board in

violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the contract is null and void and without legal effect because Cameron LNG's Liquefaction Facility at 301 N. Main Street in Hackberry, Louisiana, is not a plant or establishment which will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process;

V.      That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the contract is null and void and without legal effect because Cameron LNG's Liquefaction Facility at 301 N. Main Street in Hackberry, Louisiana, is not a new "manufacturing establishment" or an "addition to an existing manufacturing establishment" according to the constitutional definition found at Louisiana Constitution of 1974, Article VII, Section 21(F);

VI.     That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of Liquefaction Contract I to Cameron LNG was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the contract is null and void and without legal effect because the purported "manufacturing process" described by Cameron LNG in its application does not meet the required definition of "working raw materials into wares suitable

for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition to" definitions as outlined in the Louisiana Constitution of 1974, Article VII, Section 21(F);

VII.    That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of Liquefaction Contract II to Cameron LNG was an improper act of the Board in violation of Louisiana Constitution of 1974, Article VII, Section 21(F) because Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact: (1) Cameron LNG did not have an existing manufacturing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (2) Cameron LNG did not have an existing plant or establishment at the provided facility location at the time the application was considered by the Board; and/or (3) the facility was not an addition to the already existing Regasification Facility; and/or (4) the facility was not an addition to an already existing establishment at the provided Liquefaction Facility address; and/or (5) the facility was not going to serve as an integral part of any existing process that may or may not be already occurring at the Regasification Facility and/or the Liquefaction Facility;

VIII.    That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of

Liquefaction Contract II to Cameron LNG was an improper act of the Board in violation of La. Const. art. VII, § 21(F) because Cameron LNG submitted Liquefaction Application II and Liquefaction Advance Notification Form II to LDED which failed to state that Cameron LNG was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F);

IX.     That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of Liquefaction Contract II to Cameron LNG was an improper act of the Board in violation of La. Const. art. VII, § 21(F) because Cameron LNG's facility at 255 North Main Street in Hackberry, Louisiana, is not a plant or establishment which engages or will engage in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process;

X.     That this Court issue a declaratory judgment in favor of the Plaintiff and the Class and against the Defendants, declaring that Liquefaction Contract I and II are unconstitutional because the purported "manufacturing process" described by Cameron LNG in Liquefaction Application I and II does not meet the required definition of "working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition to an existing manufacturing establishment" definitions as outlined in La. Const. art. VII, § 21(F);

XI.    For all costs of this suit, and attorney's fees, if available, and for legal interest thereon from the date of the filing of these proceedings; and,

XII.    For all other just and equitable relief.

**BY ATTORNEYS**:

*/s/ Stan P. Baudin*
**PATRICK W. PENDLEY – LSBA #10421**
**STAN P. BAUDIN – LSBA #22937**
**PENDLEY, BAUDIN & COFFIN, LLP**
**24110 Eden Street**
**Plaquemine, LA 70764**
**(225) 687-6396 – VOICE**
**(225) 687-6398 - FAX**

**CHRISTOPHER D. SHOWS – LSBA #20608**
**PIERCE & SHOWS, APLC**
**601 St. Joseph Street**
**Baton Rouge, LA 70802**
**(225) 388-9574 – VOICE**
**(225) 388-0081 - FAX**

**TROY D. MORAIN- LSBA #19070**
**THE MORAIN FIRM, LLC**
**8550 United Plaza Blvd., Suite 702**
**Baton Rouge, LA 70809**
**(225) 767-7151 - VOICE**
**(225) 767-8995 - FAX**

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that a copy of the foregoing First Amending Class Action Complaint was served upon all counsel of record via the Court's CM/ECF filing system this 12th day of January, 2018.

*/s/ Stan P. Baudin*
**Stan P. Baudin**